## CONSOLIDATED UNDERWRITERS v. PRUITT.

### No. 5618.

Court of Civil Appeals of Texas.   Amarillo.
May 1, 1944.

Rehearing Denied May 29, 1944.

C. A. Lord, of Beaumont, for appellant.

K. W. Stephenson, of Orange, for appellee.

STOKES, Justice.

This is a compensation suit instituted by appellee, Lee Pruitt, to set aside the award of the Industrial Accident Board and to recover compensation for a period of 401 weeks for alleged total and permanent incapacity to labor by virtue of an injury received by him on July 10, 1941, while in the course of his employment with the Texas Creosoting Company for whom appellant was the compensation insurance carrier. His duties consisted of checking and marking creosoted poles, moving them from one designated place to another by means of what is termed a small iron buggy and transferring them from the small iron buggy to a large buggy. He alleged, and the testimony showed without dispute, that on the day he received the injury it had been raining and the platform over which he was conveying the poles in the small buggy was wet and slippery; that he slipped and fell and his right leg in the region of the knee struck the iron buggy, the impact resulting in injury slightly above the knee; that he was treated by appellant's physician and he was totally incapacitated for a period of three weeks, after which, under the physician's advice, he returned and performed lighter work until December 11, 1941, when he was given a final discharge by the physician. He then returned to his original employment of checking and moving the poles and continued in that work until October 22, 1942. He did not file with the Industrial Accident Board a claim for compensation until October 24, 1942, and he alleged, as good cause for the delay, that the physician advised him a number of times that his injury was not serious but trivial in its nature and that he would completely recover within a reasonable time.

Appellant answered by the general issue and specially pleaded the failure of appellee to give notice of his injury and file his claim for compensation within six months after receiving the injury, as provided by Section 4a, Article 8307, R.C.S. 1925.

The case was submitted to a jury upon special issues, in answer to which the jury found that appellee received an accidental injury on July 10, 1941, while in the course of his employment; that the injury extended to and affected other parts of his body; that it produced pain and extended throughout his right leg, hip, and back; that his future disability will not be confined to his right knee and leg; that the injury was the producing cause of his disability to work and earn money; that it had impaired his health and resulted in his total incapacity to work and earn money, which total incapacity began October 21, 1942; that his total incapacity is permanent; and that manifest hardship would result if the compensation was not paid in a lump sum. They further found that shortly after receiving the injury appellee was advised by Dr. H. W. Pearce, the physician who treated him, that his injury was not serious; that Dr. Pearce advised him from time to time that it was of a trivial nature; that he believed the advice given him by Dr. Pearce, that he relied upon it, and that the advice caused him to delay filing his claim until it was filed; that he failed to file his claim on account of the advice given him by Dr. Pearce; that such advice constituted good cause for not filing his claim until it was filed; that good cause for the delay existed from the date of his injury until the claim was filed with the Industrial Accident Board; and that his incapacity was not limited to his right leg.

Based upon the findings of the jury, the court entered judgment in favor of appellee for compensation at the rate of $18.85 per week for a period of 334 weeks, beginning October 21, 1942, to be paid in a lump sum.

After all the testimony was introduced, appellant presented and urged a motion for a peremptory instruction, which motion was overruled by the court, and after the verdict was returned, it presented and urged a motion for a judgment in its favor non obstante veredicto, which was likewise overruled, and its motion for a new trial being overruled, appellant gave notice of appeal and perfected its appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District at Beaumont. Upon an order equalizing the dockets of the Courts of Civil Appeals, the Supreme

Court transferred the case to this court and it is now before us for review.

Appellant presents ten assignments or points of error, which we think may be reduced to four contentions. It contends, first, that the court erred in refusing to give to the jury its requested peremptory instruction and in overruling its motion for judgment non obstante veredicto and in submitting Special Issue No. 21 pertaining to the appellee's allegations of good cause for delay in filing his claim, because there was no substantial evidence of good cause for the delay in filing his claim within the six months provided by the statute; secondly, that the court erred in submitting to the jury Special Issues Nos. 18 and 19, inquiring as to whether or not appellee relied upon the advice of Dr. Pearce and whether or not such advice caused appellee to delay the filing of his claim; thirdly, that the court erred in denying its motion for judgment non obstante veredicto because, in answer to Special Issue 4–B, the jury found that the injury to plaintiff's leg did not extend to his entire body and, therefore, the injury was not a general one; and, fourthly, that the court erred in its calculation of the amount to which appellee was entitled under the testimony pertaining to his average weekly wage.

The record shows the injury was received by appellee on July 10, 1941, and he did not file a claim with the Industrial Accident Board until October 24, 1942, more than one year and three months after he received the injury. Section 4a of Article 8307, R.C.S.1925, provides that no proceeding for compensation shall be maintained unless a notice of the injury is given to the association or subscriber within thirty days after the injury is received and a claim for compensation is filed with the Industrial Accident Board within six months after the injury. It further provides, however, that for good cause, the Board may, in meritorious cases, waive strict compliance with the limitations as to notice and filing of the claim. The testimony showed that immediately after receiving his injury the appellee was taken to the office of appellant's physician, Dr. H. W. Pearce, who treated the injury and bandaged his leg. He was totally incapacitated until August 2, 1941, and for a period of three weeks he was paid compensation by appellant. On August second, Dr. Pearce informed appellee he was able to return to work provided he performed work that did not require heavy lifting or involve standing or moving about upon his feet. He then returned to work and was given work of a lighter nature than that in which he was engaged at the time he received the injury, and he remained in that employment until December 11, 1941, at which time he was discharged by the physician and then resumed his former job. He testified that at frequent intervals he was treated by Dr. Pearce between August 2, and December 11, 1941. It seems that he had little, if any, difficulty from December 11, 1941, until July 19, 1942, when, he testified, his leg became swollen and he returned to Dr. Pearce who again treated him and bandaged his leg. After a short time he again returned to his work and continued until October 16, 1942. He testified that, upon at least three occasions during this time, his knee slipped out of joint and was reduced by his fellow employes. On October 16, 1942, his draft board in Louisiana called him for examination for service in the army and he went to Lafayette, Louisiana where, after waiting for two days, he was examined by army physicians who rejected him, placed him in classification 4–f and released him. He then returned to Orange and resumed his labors in the same employment for three days when, he said, his leg again became swollen and gave him a great deal of pain and that his hip and back were also affected and pained him. He then consulted Dr. C. E. Phillips, who found considerable swelling in the leg and a great deal of pain, and this was confirmed by Dr. Phillips in his testimony. He said Dr. Phillips informed him the injury to his leg was serious and had resulted in a permanent injury. He said that, from the recurrence of the swelling of his leg and pain in his leg, hip, and back, and the opinion of Dr. Phillips, he concluded that his injuries were permanent and that he was totally incapacitated to perform any kind of labor. He said he immediately consulted an attorney who prepared his claim and had it filed with the Industrial Accident Board on October 24, 1942.

Dr. Pearce testified that he treated appellee's injuries and after a short time he sent him back to work, with the idea that the condition of his knee would improve. He said appellee's condition was not alarming and was not of a serious nature and

that he so informed the appellee. While Dr. Pearce did not seem to remember having treated the appellee more than once or twice, appellee testified that Dr. Pearce treated him a number of times. He said that over a considerable period of time he visited Dr. Pearce every day and later he visited him every two or three days and that during all of the time Dr. Pearce was treating him, he advised appellee that the injury to his leg was not serious in its nature but that ultimately he would entirely recover. He said, furthermore, that at times his leg would get better and give him little or no pain or trouble but that after an interval it would lapse into its former condition, and that these conditions extended over the entire period from the date of his injury until July 1942, which was the last date upon which Dr. Pearce treated him. He said that when he went to Lafayette to be examined for service in the army, he was forced to stand upon his feet practically all of the time for two days and that this experience resulted in aggravating the condition of his leg, hip, and back to such an extent that he could not perform labor when he returned; that he discovered this when he attempted to return to his work for two or three days prior to his visit to Dr. Phillips. Both the appellee and Dr. Phillips testified that appellee's condition was gradually growing worse and that he was not able to perform labor.

■ We think the testimony abundantly supports the verdict of the jury to the effect that Dr. Pearce advised appellee from time to time between the date of his injury and July 1942, that his injury was not of a serious nature, but was trivial, and that appellee would completely recover; that appellee believed the physician's advice to be correct; and that he relied upon it in delaying the filing of his claim with the Industrial Accident Board.

■ The law is well settled in this State that the bona fide belief of a claimant that his injuries are not serious is sufficient to constitute the good cause provided by the statute for not filing his claim within the six months therein specified. It has been held a number of times by our courts that the advice of a physician to the effect that injuries are not of a serious nature but are temporary and trivial is sufficient to show good cause for the delay in filing a claim where it is shown that the claimant believed and relied upon the

statements made by the physician. Texas Employers' Ins. Ass'n v. Roberts, 135 Tex. 123, 139 S.W.2d 80; Gulf Casualty Co. v. Taylor, Tex.Civ.App., 67 S.W.2d 415; Texas Employers' Ins. Ass'n v. Clark, Tex. Civ.App., 23 S.W.2d 405; Texas Employers' Ins. Ass'n v. Fowler, 140 S.W.2d 545; American Mut. Liability Ins. Co. v. Wedgeworth, Tex.Civ.App., 140 S.W.2d 213.

■ Appellant contends that the appellee was fully informed of the nature and extent of his injury from the time he received it until he filed his claim with the Industrial Accident Board and that, therefore, he was not justified in depending upon the advice of a physician to the contrary. While it must be conceded that appellee knew he had been injured, it does not necessarily follow that he knew the nature and extent of his injury. There would be little use for physicians and surgeons if every person knew the nature and extent of his injuries and diseases. Their principal benefit to mankind consists of their services in discovering the nature and extent of human ailments, and we cannot agree with appellant in its assertion that, merely because appellee knew he had been injured, that he was experiencing pain, that at times his leg would swell, and all of the other things suffered by him by reason of the injury, necessarily gave to him information which only experts in that line can possibly have concerning the nature, extent, and duration of such injuries and ailments. We cannot accede to appellant's first contention and it will therefore be overruled.

■ By Special Issues Nos. 18 and 19, the court requested the jury to find whether or not appellee relied upon the advice of Dr. Pearce and whether or not such advice caused him to delay filing his claim until October 24, 1942. These issues were answered in the affirmative by the jury. Appellant objected to their submission and, under its second contention, it insists that the court erred in submitting them because, it says, the question of whether or not the appellee relied upon the advice of the physician was purely an arbitrary one and did not submit to the jury the question of whether or not appellee was justified in acting upon such advice. It further contends that both of these issues submitted an improper standard because, under the Compensation Law, a claimant is required to exercise the same degree of diligence as a person of ordinary prudence would

exercise under the same or similar circumstances. We are unable to agree with appellant in this contention. In the nature of things, the physician knew a great deal more about the nature and extent of appellee's injuries than appellee could have known. Appellee testified that he relied upon the advice given him by Dr. Pearce, because Dr. Pearce was a physician and appellee was not.

In the case of Texas Employers' Insurance Association v. Roberts, supra, the Supreme Court held that ordinarily the question whether good cause exists for not filing a claim for compensation within six months after the occurrence of the injury is a question of fact. In the instant case the appellee alleged that he had good cause for the delay and it consisted of the fact that the physician had advised him his injury was trivial and not of a serious nature and that he relied upon such advice. This was a vital question of fact in the case for the reason that, even if it had been shown that the physician so advised appellee but it had also been shown that he did not rely upon that advice, it would not have constituted good cause for the delay. The advice would have amounted to nothing unless appellee relied upon it, and the question of whether he did or not was a proper issue for the jury to determine.

■ As to appellant's contention that these special issues submitted an improper standard and that they should have been so framed as to elicit from the jury a finding as to whether the appellee acted as an ordinarily prudent person would have acted under the same or similar circumstances, it is obvious, we think, that the court did not err in refusing to substitute that question for those submitted in the special issues. It will be noted that appellant does not complain of the court's charge on the ground that it nowhere submitted the question of whether or not appellee acted in the same manner as would an ordinarily prudent person in the matter of delaying the filing of his claim. In our opinion, the court properly submitted in these two special issues the question of reliance upon the advice by the appellee and whether or not such advice caused him to delay filing his claim for compensation, and appellant's second contention will therefore be overruled.

■ The third contention is that the court erred in refusing appellant's motion for judgment non obstante veredicto, because in answer to Special Issue No. 4–B the jury found that the injury to appellee's right leg did not extend to his entire body. Appellee alleged in his petition that the injury to his leg frequently caused fever to arise and thereby it had affected his entire body, but there was no substantial evidence to support the allegation. Under other special issues the jury found that the injury to appellee's right leg extended to and affected his right leg, right hip, and back. They also found that his future disability would not be confined to his right knee nor to his right leg and that the injury had resulted in the impairment of his health and total incapacity to work and earn money. These findings were supported by the testimony and as they consisted of material fact issues, they were proper subjects for determination by the jury. If, as found by the jury, the injury to appellee's leg extends to and affects his hip and back, and that by virtue of the injury and its extension to his hip and back he has become totally incapacitated to perform labor and earn money, it necessarily follows that his injury is not confined to his leg, and, therefore, a specific one, but is a general injury, as a result of which he is totally and permanently disabled. The fact that the injury did not extend to his entire body would not affect the judgment to which he was entitled.

■ Appellant's fourth contention, that the judgment is excessive, must be sustained. In fact, it is admitted by the appellee that the judgment is excessive and, after the appeal was perfected, he filed a remittitur for the excessive amount. Appellee was awarded compensation at the rate of $18.85 per week. The undisputed testimony showed that, during the preceding year, he worked 365 days and that his average daily wage was $3.36, which would amount to $1,226.40 per annum. His average weekly wage would therefore amount to $23.58, and sixty percent thereof, allowed by the statute as compensation, would amount to $14.14, which should have been awarded to appellee instead of $18.85, as reflected by the judgment. The judgment will therefore be reformed and reduced to the extent of the remittitur, and as so reformed it will be affirmed.

■ The error in computing the compensation to which appellee was entitled was distinctly called to the attention of the court by appellant in its motion for a new trial, yet no remittitur was filed until

after appellant had incurred the expense of perfecting its appeal. The costs of the appeal will therefore be adjudged against the appellee. Pearce v. Tootle, 75 Tex. 148, 12 S.W. 536; White v. Glover, 31 Tex.Civ.App. 8, 71 S.W. 319; Blain v. Park Bank & Trust Co., 43 Tex.Civ.App. 359, 94 S.W. 1091; New York Life Ins. Co. v. Herbert, 48 Tex.Civ.App. 95, 106 S.W. 421.

Reformed and affirmed.